UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WILLIAM TATE, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 3:09-0201 |
| HARTSVILLE/TROUSDALE COUNTY, ) ) | Judge Campbell |
| Defendant. ) | |

## MEMORANDUM

This is a class action under 42 U.S.C. § 1983 in which Plaintiff William Tate alleges that the process for setting bail in Hartsville/Trousdale County Tennessee violates the Eighth and Fourteenth Amendments to the United States Constitution. Pending before the Court are several motions filed by Defendant, including a "Motion for Summary Judgment" (Docket No. 57), a "Motion to Deem Statements of Undisputed Facts to be Undisputed for Purposes of Motion" (Docket No. 75), a "Motion to Strike Table[s] I-V" (Docket No. 77), and a "Motion to Decertify Class" (Docket No. 80).

### I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

This litigation arose after Plaintiff was arrested on March 10, 2008, in Trousdale County on aggravated and domestic assault charges. The arrest warrant was issued by Charles Puckett ("Puckett") who, along with David Freeman ("Freeman"), serves as a Judicial Commissioner for Trousdale County.

Neither Commissioner Puckett nor Commissioner Freeman has a law degree – the former is a local barber, and the latter is retired from the Trousdale County Board of Education.

1

Nevertheless, both Commissioners received on the job training for the performance of their official duties, and both attend annual seminars presented by the Judicial Commissioners Association of Tennessee.

According to both Commissioners, numerous factors are considered in determining whether bail should be set in Hartsville/Trousdale County and, if so, in what amount. The factors which they take into consideration include (1) the name of the suspect; (2) his or her residential address; (3) his or her length at current residence; (4) whether he or she owns or rents property; (5) whether he or she is employed, where he or she is employed, and the length of time employed in his or her current position; (6) the nature and severity of the charged offense; (7) his or her prior criminal record; and (8) other factors deemed pertinent, including the safety of the victim and community in general, and the individual's family ties in the county. None of the factors is controlling and other factors may be considered, such as whether the Judicial Commissioner knows the individual personally and considers him or her to be trustworthy.

Also according to Commissioners Puckett and Freeman, in an effort to properly consider the relevant factors, they generally meet and talk to the individual defendant before setting bail. However, that is not always possible and sometimes the Commissioners look to their own personal knowledge about the individual, the individual's past criminal record, and other sources.

On March 10, 2008, Commissioner Puckett was summoned to City Hall to meet with Patrick Green ("Green"), Plaintiff's stepson, about a possible assault. Green told Commissioner Puckett that Plaintiff had struck him on the back of the leg with a piece of PVC pipe. After listening to Green, Commissioner Puckett determined there was probable cause for Plaintiff's arrest on aggravated and domestic assault charges and issued an arrest warrant.

2

After Plaintiff was taken into custody and brought to the county jail, Commissioner Puckett went to the booking room and spoke with Plaintiff. What occurred during the course of that conversation (and possibly a second conversation) is the subject of some dispute.

While Commissioner Puckett does not remember much about his encounter with Plaintiff, he remembers that he briefly saw Plaintiff in the booking room, left the booking room to secure a form, and returned to the booking room to continue his conversation with Plaintiff. Commissioner Puckett recalls that Plaintiff was sarcastic in his remarks, but, that notwithstanding, he was sure that he would have asked Plaintiff such things as how long he lived at his address, whether he owned the residence or was renting, where he worked and for how long, and other questions which would have provided some insight into whether Plaintiff was a flight risk. (Puckett Depo. Vol. II at 112). Commissioner Puckett also claims that he reviewed Plaintiff's criminal history before setting bail. (Id. at 117).

For his part, Plaintiff admits seeing the Commissioner briefly. However, and unlike other occasions after he had been arrested, Plaintiff claims that Commissioner Puckett did not ask him any questions relevant to the issue of bail, such as where Plaintiff lived and how long he lived at his residence. Instead, Plaintiff asserts the amount of bail was pre-determined as evidenced by the fact that he was informed about the amount of his bail when he was arrested. At the jail, he was only asked questions by the jailers relevant to booking, i.e., his name, address, and date of birth. (Pf. Depo. at 102, 104-05).

At the time of his arrest, Plaintiff had been unemployed for two years. He moved from Littlestown, Pennsylvania to Tennessee in 2003. When he moved to Tennessee, Plaintiff first lived in Bon Aqua for a few months, moved to Murfreesboro and lived there for approximately a month,

3

moved to Spring Hill and lived there for approximately two years, and finally ended up living in Trousdale County at some point in 2007. He and his wife purchased a residence in Trousdale County, although Plaintiff cannot recall how much the house was purchased for, or the amount of his monthly mortgage payments. Plaintiff owns no other real property in Trousdale County.

Plaintiff's arrest on March 10, 2008 was not his first. Sometime in the mid-1990's, Plaintiff was arrested in Westminster, Maryland, for assaulting a state trooper. In 2001 he was arrested in Littlestown, Pennsylvania and charged with rape, involuntary deviant sexual intercourse, aggravated indecent assault, indecent assault, and corruption of a minor. That same year, he was arrested there for criminal trespass. In 2006, Plaintiff was arrested in Maury County, Tennessee, for assaulting Green, his stepson.

For allegedly assaulting Green in March 2008, Commissioner Puckett set Plaintiff's bail at $2,000. Because the charges included domestic assault, Plaintiff was prohibited from posting bond for approximately 12 hours. Commissioner Puckett believed that those arrested on domestic assault charges were to be placed on a 12-hour hold which serves as a "cooling-down" period. However, Commissioner Puckett also believed that the time could be lessened in the Commissioner's discretion and, if it was, the Commissioner was to make a notation in the record as to the reasons for the shorter period. (Puckett Depo. Vol. II at 121). Within twelve hours of being formally booked, Plaintiff posted bail and was released from the county jail.

In Trousdale County, if a defendant is dissatisfied with the failure to set bail or the amount of his bail, he or she may request a bail reduction hearing in General Sessions Court before Judge Kenny Linville. Judge Linville regularly holds court in Trousdale County every Monday, Thursday and Friday, but is available more frequently if necessary. Despite the bond hearing review process,

4

Plaintiff never requested a bond hearing in the General Sessions Court.

Based upon the foregoing, Plaintiff filed suit "pursuant to 42 U.S.C. §1983 and the common and statutory laws of the State of Tennessee to redress the violation by Defendant of Plaintiff's rights

secured by the Eighth and Fourteenth Amendments to the United States Constitution and applicable provisions of the Tennessee Constitution, that is, Plaintiff's right to have bail set on an individualized basis and narrowly tailored to address the issue of likelihood to flee and danger to the community if released." (Complaint ¶ 1).[1] On November 20, 2009, the Court entered an Order granting Plaintiff's request for class certification and, in accordance with Fed. R. Civ. P.23(c)(1), certified "a class of those persons who, since March 3, 2008, have been, are, or will be presented to a Hartsville/Trousdale County judicial commissioner for the setting of bail," with the class issue being "whether there is a practice, pattern or policy within Hartsville/Trousdale County of unconstitutionally and arbitrarily setting bail." (Docket No. 41 at 1, footnote omitted).

## II. DISCUSSION

### A. Motion to Deem Statement of Facts Undisputed (Docket No. 75)

As required by Local Rule 56.01(b), Defendant filed a concise statement of facts, set forth in numbered paragraphs, which it deemed to be undisputed for purposes of its motion for summary judgment. In response, Plaintiff admitted many of the stated facts, but disputed those facts set forth in paragraphs 17-18, 20, 22-26 and 34. Defendant now moves to have the facts set forth in those

---

[1] While Plaintiff's Complaint mentions the "common and statutory laws" of Tennessee, as well as the Tennessee Constitution, he has made clear that he is asserting no self-standing state law claim and that "the complaint has one count and it clearly labels it as an action under 42 U.S.C. § 1983." (Docket No. 37 at 1). In light of that representation, Defendant's "Motion to Dismiss State Claims" (Docket Entry No. 29) was denied as moot. (Docket No. 38).

5

paragraphs deemed admitted because, in disputing many of those facts, Plaintiff merely references a section of his brief and, when he does specifically cite to the record, those citations do not show that the facts set forth by Defendant are incorrect.

Local Rule 56.01(c) provides that where a party disputes a fact set forth by an opponent in support of a motion for summary judgment, the non-moving party must "demonstrat[e] that the fact is disputed . . . by specific citation to the record." L.R. 56.01(c).

It is unnecessary to rule upon Defendant's request that the statements contained in paragraphs 17-18, 20, 22-26 and 34 of its Statement of Undisputed Facts be deemed undisputed. Even construing the relevant and supported facts in Plaintiff's favor, it is clear that Defendant is entitled to summary judgment on the specific claim asserted by Plaintiff. The Motion to Deem Statement of Facts Undisputed (Docket No. 75) will be denied as moot.

**B.   Motion to Strike Table[s] I-V (Docket No. 77)**

In response to Defendant's Motion for Summary Judgment, Plaintiff filed an Appendix which included five tables which purport to summarize mittimusses issued by Commissioners Puckett and Freeman. The tables include lists of mittimusses with holds "for out-of-county-warrants" (Table I), "FTA or failure to appear"(Table II), and "for violation of probation or capias" (Table III), as well as lists of "DUI sorted by bond amount" (Table IV), and "PI sorted by bond amount" (Table V). Defendant moves to strike these tables on the grounds that both the tables and underlying data have not been authenticated or shown to be admissible, and that the tables "are replete with numerous errors, misstatements, and information which simply do[] not appear in the mittimusses which they purport to 'summarize.'" (Docket Entry No. 78 at 6).

The tables were supplied in an effort to defeat Defendant's Motion for Summary Judgment.

6

However, and as explained below, they are not relevant to the issue of whether Plaintiff suffered a constitutional deprivation, but instead go to the alleged mistreatment of other members of the class. As such, the Motion to Strike will be taken under advisement. Because the tables may have some bearing in relation to the unnamed class members' claims, the Court will consider the Motion to Strike when it rules on the Motion to Decertify.

**C. Motion for Summary Judgment (Docket No. 57)**

**1. Standard of Review**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the Court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. Meyers v. Columbia/HCA Healthcare Corp., 341 F.3d 461, 466 (6th Cir. 2003); Hopson v. DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

**2. Legal Analysis**

As indicated, Plaintiff brings this case solely pursuant to 42 U.S.C. § 1983 for alleged constitutional violations by Hartsville/Trousdale County in the setting of bail. Section 1983 is intended to provide a remedy against actions by states which deprive people of their federal rights, that is, it "does not confer substantive rights but merely provides a means to vindicate rights conferred by the Constitution or laws of the United States." Aldini v. Johnson, 609 F.3d 858, 864 (6th Cir. 2010). To prevail on his Section 1983 claim, Plaintiff must prove that Defendant acted under color of state law and that the offending conduct deprived him of a right secured by federal law. League of Women Voters v. Brunner, 548 F.3d 463, 475 (6th Cir. 2008).

7

Here, there is no dispute as to the color of state law element, and the sole question is whether Plaintiff was deprived of a right secured by federal law when his bail was set by Commissioner Puckett. Plaintiff claims that his federal rights under the Eighth and Fourteenth Amendments were violated.

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Although it has not definitively decided the matter, the United States Supreme Court has assumed that the "excessive bail" provision of the Eighth Amendment is applicable to the states by virtue of the Due Process Clause of the Fourteenth Amendment. Baker v. McCollan, 443 U.S. 127, 144 n.3 (1979).

The Excessive Bail Clause does not guarantee a right to bail, but it does guarantee that any bail imposed "not be 'excessive' in light of the perceived evil." United States v. Salerno, 481 U.S. 739, 754 (1987). Perceived evils include the risk of flight and the possible harm to the public. Id. at 754-55.

In this case, Defendant argues it is entitled to summary judgment on Plaintiff's claim primarily because the amount of the bond – $2,000 – was not excessive under the Eighth Amendment. Plaintiff does not seriously dispute the notion that the actual bond amount was not excessive, but instead argues that Defendant "just doesn't get it" (Docket No. 70 at 2) because he is challenging the system and process of setting bail in Hartsville/Trousdale County, and not whether a particular bond amount is excessive.

Because he claims to be challenging the "conditions" of bail, Plaintiff does not focus on the specific issue of whether his own constitutional rights were violated. Instead, he discusses bail

8

generally under federal law, and the bail requirements set forth in Tennessee statutes.  In doing so, Plaintiff mistakenly assumes that as class representative he need not establish the validity of his own claim.  Indeed, Plaintiff argues that to be entitled to summary judgment, "Defendant has the burden of showing that there does not exist a material fact in dispute as to <u>any class member</u>, not just as to Plaintiff Tate."  (Docket No. 70 at 4)(emphasis in original).

In support of his position, Plaintiff relies on cases such as <u>Brunet v. Columbus</u>, 1 F.3d 390 (6th Cir. 1993) and <u>Wiesmueller v. Kosbucki</u>, 513 F.3d 784 (7th Cir. 2008).  Those cases, however, are inapposite because they dealt with situations where the claims of the class representative or the individual seeking to represent a class became moot.  In such situations, "the *suit* is not moot unless the claims of *all* unnamed class members are moot," and even though "[t]he named plaintiff who no longer has a stake may not be a suitable class representative, . . . that is not a matter of jurisdiction and would not disqualify him from continuing as class representative until a more suitable member of the class was found to replace him." <u>Wiesmueller</u>, 513 F.3d at 786 (italics in original); <u>see</u>, <u>Brunet</u>, 1 F.3d at 399 (italics added)("the mooting of the named plaintiff's claim does not moot the action, *if* a controversy between any class member and the defendant exists").

"A plaintiff who brings a class action presents two separate issues for judicial resolution." <u>U.S. Parole Comm. v. Geraghty</u>, 445 U.S. 388, 401 (1980).  "One is the claim on the merits; the other is the claim that he is entitled to represent a class." <u>Id.</u>  Therefore, a class representative must establish that he or she suffered injury as a result of the unlawful practices of a defendant, otherwise he or she is in "no position to mount a classwide attack[.]" <u>E. Tex. Motor Freight Sys., Inc. v. Rodriguez</u>, 431 U.S. 395, 403 (1977).  This is because "[t]he Article III standing requirements apply equally to class actions" and the class representative must allege and ultimately prove "an

9

individual, personal injury in order to seek relief on behalf of himself or any other member of the class." Sutton v. St. Jude Medical S.C., Inc., 419 F.3d 568, 570 (6th Cir. 2005); see, Lierboe v. State Farm Mut. Auto. Ins. Co., 350 F.3d 1018, 1022 (9th Cir. 2004)(citation omitted)("'[I]n class actions, the named representatives must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent'").

Turning to the merits of Plaintiff's individual claims, "to determine whether bail is excessive, [a court] must compare the terms of the bail against the interest the government seeks to protect." Cambell v. Johnson, 586 F.3d 835, 842 (11th Cir. 2009)(citing, Salerno, 481 U.S. at 754). Here, the terms of the bail ($2,000) was indisputably imposed to ensure Plaintiff's attendance, which is a legitimate reason for imposing bail. Stack v. Boyle, 342 U.S. 1, 4-5 (1951)("The right to release before trial is conditioned upon the accused's giving adequate assurance that he will stand trial" and, "the modern practice of requiring a bail bond or the deposit of a sum of money subject to forfeiture serves as additional assurance of the presence of an accused").

As indicated, instead of focusing on the validity of his own claim, Plaintiff summarizes what he views to be the general principles regarding the setting of bail and specific provisions of Tennessee law and claims that Defendant's practices violate the same. According to Plaintiff, "under Tennessee law: 1. All arrestees are entitled to bail, even those arrested for violations of conditions of bail previously set (Failure to Appear or capias warrants); 2. Persons arrested on out-of-county warrants are entitled to bail in the allowance of bail in county of arrest in the same manner as anyone else arrested in that county; 3. No one can be committed to the jail until an examination for the purpose of determining the need for bail is done by a magistrate; 4. Bail cannot

10

be restricted in form, such as cash bond or other type; 5. The 12-hour "hold" on domestic assault arrests may only be implemented after a determination that the alleged victim is in danger. . .; 6. There is no statutory authority for a judge to tell a judicial commissioner how to do his job or set other conditions or rules for setting bail; 7. A judicial commissioner must set bail . . . ; 8. The reasons for bail must be reduced to writing; 9. The default release is release on recognizance (ROR) . . ; 10. A pre-set bond schedule is specifically prohibited."  (Docket No. 70 at 12-13, footnote omitted).

Some of the foregoing factors which Plaintiff relies upon are not relevant to the specific issue of whether Plaintiff suffered an injury or harm by virtue of Defendant's conduct.  He was not arrested on an out-of-county, failure to appear, or capias warrant, and he was given bail.

Plaintiff has specifically stated that he is not making any state law claims and that his case is brought solely under 42 U.S.C. § 1983.  However, Section 1983 "does not provide relief for a violation of state law."  See, Michael v. Ghee, 498 F.3d 372, 374 (6th Cir. 2007); Huron v. Valley Hosp., 887 F.2d 710, 714 (6th Cir. 1989).  This is because states are "'free to enact laws that are more protective of individual rights than the United States Constitution'" and "'a mere violation of such a state law will not establish a proper claim under § 1983.'" Pyles v. Raisor, 60 F.3d 1211, 1215 (6th Cir. 1995)(citation omitted).

Yet even considering the specific Tennessee provisions in relation to the setting of Plaintiff's bail, the Court finds no genuine issue of material fact for trial on whether a violation of the Eighth or Fourteenth Amendment occurred.  Plaintiff claims that, prior to bail being set, he was not examined (nor was an examination reduced to writing) by the Commissioner in violation of T.C.A. §§ 40-5-105.  Even if true, this does not show that the bail imposed was excessive.  See, Galen v.

11

County of Los Angeles, 477 F.3d 652, 662 (9th Cir. 2007)("The Commissioner's failure to hold a hearing in open court before enhancing [plaintiff's] bail and to state his reasons for the enhancement on the record, as required by California Penal Code section 1270.1, does not excuse [plaintiff] from his burden of demonstrating in this § 1983 action that his bail was excessive"). A court cannot "assume that plaintiff's bail was excessive simply because the state failed to comply with a self-imposed procedural requirement[.]" Id. Again, "Section 1983 requires [plaintiff] to demonstrate a violation of federal law, not state law." Id.

Nor does the fact that the bail was allegedly preset, standing alone, amount to a constitutional deprivation. See, Glenn v. City of Columbus, 2003 WL 21766538 at *1 (5th Cir. 2003)(use of bond schedule does not violate the Excessive Bail or Due Process clauses); Terrell v. City of El Paso, 481 F.Supp.2d 757, 766 (W.D. Tex. 2007)("Exhaustive research regarding the constitutionality of bond schedules in § 1983 cases" reveals "only one case where a federal court found the use of a bond schedule to be unconstitutional"). Instead, to survive summary judgment, Plaintiff must link how the allegedly preset amount "necessarily result[ed] in an excessive amount of bail," and "merely concluding it was improperly set is not sufficient." Terrell, 481 F.Supp.2d at 766.

Plaintiff also claims that his constitutional rights were violated because he was held 12 hours after booking before he was allowed to post bond. This was because, as Commissioner Puckett explained at his deposition, the Commissioner believed that state law automatically required that those arrested on domestic assault charges be held for 12 hours, unless the Commissioner determined that such a "cooling-off" period was unnecessary.

Plaintiff argues Commissioner Puckett's interpretation of the law was backwards because the relevant Tennessee statute provides:

12

> (1) Any offender arrested for . . . [domestic abuse] . . . shall not be released within twelve (12) hours of arrest, if the magistrate or other official duly authorized to release the offender finds that the offender is a threat to the alleged victim. The official may, however, release the accused in less than twelve (12) hours if the official determines that sufficient time has or will have elapsed for the victim to be protected.
> (2) The written findings must be attached to the warrant and shall be preserved as a permanent part of the record. The arresting officer shall make official note of the time of the arrest in order to establish the beginning of the twelve-hour period provided for in this subsection.

T.C.A. § 40-11-150(h)(1)-(2). However, whether Commissioner Puckett properly understood the statute is not outcome determinative since "[t]he Constitution does not require states to administer their laws correctly" and "it is not appropriate for a federal court, hearing a case under § 1983, to upbraid state officials for a supposed error of state law." Burgess v. Ryan, 996 F.2d 180, 184 (7th Cir. 1993)(collecting cases). After all, "[b]lunders in the implementation of state law are inevitable; state courts provide the remedy." Id.

So, the Court returns to the question of whether Plaintiff's federal rights were violated when he was held for twelve hours. The Supreme Court has recognized that probable cause decisions must be made promptly, but has also recognized that states should be given enough time to combine such hearings with other preliminary procedures, including bail determinations. Thus, in City of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991), the Supreme Court held that jurisdictions which provide probable cause hearings within forty-eight hours will generally be "immune from systemic challenges." Id. at 55. "The clear import of McLaughlin, then, is that a bail hearing held within 48 hours of a warrantless arrest is also presumptively constitutional – if indeed the Constitution speaks to that issue." Holder v. Town of Newton, 2010 WL 432357 at **10 -11 (D.N.H. 2010).

Given that a bail hearing may be delayed up to forty-eight hours absent some improper motive, the Court finds that a 12-hour delay in releasing Plaintiff in this case did not amount to a

13

constitutional deprivation. At most, Plaintiff has shown Commissioner Puckett allegedly to be negligent in his understanding of Tennessee law, but "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." Daniels v. Williams, 474 U.S. 327, 328 (1986). Moreover, being held for twelve hours before being released on bail does not automatically constitute a constitutional violation. See, Turner v. City of Taylor, 412 F.3d 629, 639 (6th Cir. 2005)(city's "official policy of holding domestic violence arrestees for a minimum period of 20 hours unless arraigned and released by the court" is not unconstitutional); Lund v. Hennepin County, 427 F.3d 1123, 1126-28 (8th Cir. 2005)(no due process violation where defendant was held for twelve hours after judge ordered that defendant could be released with no bail); Collins v. Ainsworth, 382 F.3d 529, 545 (5th Cir. 2004)("There is no right to post bail within 24 hours of arrest"); Holder, 2010 WL 432357 at *11 (where nine hours passed between defendant's arrest and subsequent release, that was "well within the 48-hour window [of McLaughlin] and thus presumptively constitutional").

In light of the above, the Court determines that Plaintiff has failed to establish a triable issue on his claims that Defendant violated his rights under the Eighth or Fourteenth Amendments. It does not follow, as Defendant asserts, however, that this case must be dismissed in its entirety at this juncture.

Because a designated class has a status apart from that of the class representative, dismissal of the class representative claims "does not inexorably require dismissal of the class action," nor is the Court required to consider the unnamed class members' potential claims in the abstract. Smook v. Minnehaha County, 457 F.3d 806, 815 (8th Cir. 2006). Instead, the better course is to dismiss the class representative's meritless claims and consider substituting a class representative who can show

14

injury. Id.; see, McAnaney v. Asotria Finan. Corp., 2007 WL 2702348 at *13 (E.D.N.Y. 2007)(fact that plaintiffs' "claims are no longer viable does not make the suit moot or necessarily undermine the claims of the remaining class members" and "favored" procedure is not to decertify the class but to "afford[] plaintiffs' counsel a reasonable period of time for the substitution or intervention of a new class representative"); Martinez-Mendoza v. Champion Int'l. Corp., 340 F.3d 1200, 1216 (11th Cir. 2003)(even where district court granted summary judgment on class representatives' claims, court should have addressed class certification issue and determined whether named plaintiff was qualified to serve as class representative and, if not, "whether a member of the class is willing and qualified to serve as class representative"); Whitlock v. Johnson, 153 F.3d 380, 384 (7th Cir. 1998)(where class was certified, trial court properly refused to decertify class and instead sought to substitute class representative, even though named representative's claim failed on the merits). This procedure seems particularly appropriate here because Defendant has moved to decertify the class and a possible substitution can be considered in conjunction with that motion.

### D. Motion to Decertify Class (Docket No. 80)

Defendant has filed a Motion to Decertify Class in which it reasserts many of the same arguments that were raised in opposition to the initial request for class certification. However, because the named Plaintiff's claims will be dismissed, and because the parties have completed discovery, the Court finds it prudent to revisit the class certification issue. Accordingly, the parties shall file supplemental briefs by November 1, 2010 on the Motion to Decertify Class, at which time the Court will also consider whether there exists a suitable class representative to prosecute this action.

15

## III. CONCLUSION

On the basis of the foregoing, Defendant's "Motion for Summary Judgment" (Docket No. 57) will be granted and Plaintiff's claims will be dismissed. Defendant's "Motion to Deem Statements of Undisputed Facts to be Undisputed for Purposes of Motion" (Docket No. 75) will be denied. Defendant's "Motion to Strike Table[s] I-V" (Docket No. 77) is taken under advisement. By November 1, 2010, the parties shall file supplemental briefs on Defendant's "Motion to Decertify Class" (Docket No. 80), and whether there is a suitable class representative who can be substituted for Plaintiff William Tate, and whether the Tables submitted by Plaintiff should be stricken.

By contemporaneous Order the trial in this case is continued to June 7, 2011 at 9:00 a.m. The pretrial conference is rescheduled for May 20, 2011 at 2:30 p.m.

*/s/ Todd Campbell*
Todd J. Campbell
United States District Judge

16